<u>IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION</u>

| | |
|---|---|
| **HALIL DEMIR**, an individual residing at 12230 S. Coach Rd., Palos Heights, IL 60463,<br><br>    *Plaintiff,*<br><br>vs.<br><br>**ALEJANDRO MAYORKAS**, in his official capacity as Secretary of the Department of Homeland Security, 245 Murray Ln. SW, Washington, DC 20528; **MERRICK GARLAND**, in his official capacity as Attorney General of the United States, 950 Pennsylvania Ave NW, Washington, DC 20530; **CHRISTOPHER WRAY**, in his official capacity as Director of the Federal Bureau of Investigation, 935 Pennsylvania Ave NW, Washington, DC 20535; **CHARLES KABLE IV**, in his official capacity as Director of the Terrorist Screening Center, 601 4th St. NW, Washington, DC 20535; **DAVID PEKOSKE**, in his official capacity as Administrator of the Transportation Security Administration, 601 S. 12th St., Arlington, VA 20598, and **UNKNOWN TSC EMPLOYEES**, in their official capacities,<br><br>    *Defendants.* | Civil Action No.: \_\_1:22-cv-7209_____<br><br><br>**PLAINTIFF'S ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND OTHER DAMAGES** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
<u>**DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND OTHER DAMAGES**</u>

Plaintiff Halil Demir files this Complaint seeking declaratory judgment, injunctive relief, and other damages against Defendants and shows the following:

### I.    **INTRODUCTION**

Plaintiff Halil Demir ("Mr. Demir" or "Plaintiff Demir") is a devout Muslim and long-time philanthropist, who often receives invitations to speak to U.S. government agencies, congressional

representatives, and foreign dignitaries. He endures heightened scrutiny each time he travels, including when he travels to speak to the same agencies responsible for subjecting him to scrutiny.

Despite his gracious character, lack of criminal record, and commitment to public service, Mr. Demir reasonably believes himself included in the Terrorist Screening Dataset ("TSDS").[1] Plaintiff Demir brings this action challenging the constitutionality of Defendants' policies and actions and the lack of procedural and substantive due process afforded him by these policies.

## II.  **PARTIES**

1.      Plaintiff Halil Demir is a naturalized U.S. citizen. He serves as the Executive Director of Zakat Foundation of America, a renowned charitable organization. He regularly endures unwarranted scrutiny and delays while traveling, presumably because of his race, national origin, and religion.

2.      Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security ("DHS") and is sued in his official capacity.

3.      Defendant Merrick Garland is the Attorney General of the United States. The Attorney General ("AG") leads the Department of Justice ("DOJ"), which oversees the Federal Bureau of Investigation ("FBI"). Defendant Garland is sued in his official capacity.

4.      Defendant Christopher Wray is the Director of the Federal Bureau of Investigation ("FBI"). Defendant Wray is sued in his official capacity.

---

[1] The TSDS was formerly known as the Terrorist Screening Database. *See, e.g.*, *Moharam v. FBI et al.*, Case No. 21-cv-2607 (D.D.C. filed Oct. 6, 2021), at Dkt. 20-5, Declaration of Jason V. Herring, Deputy Director for Operations of the Terrorist Screening Center (explaining that "[u]ntil very recently, the TSDS was known as the . . . 'TSDB'"). Plaintiff cites this source not to bless its accuracy as to any content asserted therein but to show the government's apparent currently preferred terminology.

5.      Defendant Charles Kable IV is the Director of the Terrorist Screening Center ("TSC"). The TSC is the agency solely responsible for adding, editing, or removing records in the TSDS. Defendant Kable is sued in his official capacity.

6.      Defendant David Pekoske is the Administrator of the Transportation Security Administration ("TSA") and is sued in his official capacity.

7.      Defendants Unknown TSC Employees are the person or persons who presumably reviewed and accepted Mr. Demir's nomination to the TSDS, creating his extensive travel difficulties.

### III.    JURISDICTION

8.      This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question Jurisdiction) as this action arises, in part, under the Fifth Amendment to the United States Constitution.

9.      Plaintiff Demir appropriately seeks relief under 28 U.S.C. § 2201(a) and 28 U.S.C. § 2202 (the Declaratory Judgment Act), which allows parties to bring suit in federal court to obtain declaratory relief not otherwise available.

10.     This Court has jurisdiction under the Administrative Procedure Act ("APA"), which authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 701, 706(1).

### IV.    VENUE

11.     Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Further, Plaintiff Demir resides in this district.

### V.    STATEMENT OF FACTS

12.     Plaintiff Demir is a naturalized U.S. citizen of Turkish national origin.

13.     He founded the Zakat Foundation of America ("Zakat Foundation") and has served as its Executive Director for more than 20 years. Zakat Foundation, based in Chicago, is an international aid organization serving forty-five countries. Though *zakat* is an Islamic concept requiring financially able Muslims to donate a portion of their wealth annually, Zakat Foundation helps all people regardless of race, ethnicity, or religion. Charity Navigator, a nationally recognized organization that evaluates the accountability and financial health of nonprofits in the United States, awarded Zakat Foundation its highest rating of four stars.

14.     Mr. Demir has never been charged with any crime, nor is he, to his knowledge, under investigation for any crime.

15.     In his work, Mr. Demir meets with people the average person could only dream of meeting. This list includes President George H.W. Bush; former Secretary of Defense, General James Mattis; Senators Dick Durbin and Lindsey Graham; Representatives Ilhan Omar, Jan Schakowsky, Chuy Garcia, Maria Newman, and Adam Kinzinger; former U.S. Ambassador to Turkey, John Bass;  Illinois Attorney General Raoul Kwame; President of Turkey, Recep Tayyip Erdogan; former President of Mali, Ibrahim Keita; former Justice Minister of Sri Lanka, Rauf Hakeem; President Obama's grandmother; Martin Sheen; and the singer Bono. This is just a sampling of the people Mr. Demir works with through his personal and professional capacities.



*With Senator Dick Durbin and Mrs. Durbin at the Rohingya Cultural Center in Chicago*



*With Martin Sheen at a breakfast celebrating International Workers' Day in 2015*

4

16.     He often receives awards honoring his public service, including one from Congressman Danny Davis of Illinois. He collaborated with Representative Ilhan Omar to arrange trucks of food deliveries in Minneapolis after the senseless murder of George Floyd. He also received an interfaith award for humanitarian activities in Chicago.



*Congressman Danny Davis presents Mr. Demir the "Organization of the Year" award for the Zakat Foundation*



*Distributing food with Rep. Ilhan Omar*

17.     Mr. Demir receives invitations to speak to various government agencies, including the United States Agency for International Development ("USAID"). Zakat Foundation hosted DHS multiple times, and Mr. Demir regularly participates in DHS's community engagement groups.



*Presenting at the Breaking Gender Barriers Conference organized by USAID in 2019*



*Mr. Demir's boarding pass leaving D.C. after his presentation at the USAID conference, showing the SSSS designation*

18.     DHS once hosted a Swedish delegation at Zakat Foundation's Chicago office. After Mr. Demir gave a short presentation, a Swedish delegate approached him to ask if his teenage son could intern at Zakat Foundation.

19.     Despite Mr. Demir's exceptional public service and philanthropy record, he regularly experiences humiliating and invasive treatment while traveling—often when traveling to speak to or meet with one of the government entities responsible for this treatment.

20.     This is not a new experience. However, the frequency and intensity of the incidents have escalated in recent years. The TSA stops him so frequently when he flies out of his home airport, Chicago O'Hare International, that he and the agents know each other by sight and name.

21.     As early as March 2016, Mr. Demir received boarding passes with the "SSSS" designation, flagging him for additional scrutiny. He recalls his boarding pass stamped with "SSSS" when he traveled to the U.S. Embassy in Turkey to conduct a ceremony welcoming Senator Lindsey Graham, nine other dignitaries, and the musician Bono.



*With Sen. Graham and other guests at the*
*U.S. Embassy in Turkey*

22.     He applied for Global Entry in 2017 due to frequent international travel, but DHS rejected his application.

 

*President George H.W. Bush personally thanked Mr. Demir for Zakat Foundation's relief work in Houston after Hurricane Harvey in August 2017*

*Mr. Demir's boarding pass from November 2017 shows the SSSS designation*

23.     On June 5, 2018, Mr. Demir and Zakat Foundation hosted a Ramadan fast-breaking dinner at the Russell Senate Office Building, attended by congresspeople, diplomats, humanitarian partners, and the Ambassador from Turkey.

 

*Mr. Demir greets guests at Zakat Foundation's Capitol Hill Ramadan fast-breaking dinner*

*Mr. Demir's boarding pass from June 6, 2016, showing the SSSS designation highlighted on the top*

24.     The next day, June 6, 2018, Mr. Demir received a boarding pass stamped with SSSS when he traveled through Ronald Reagan Washington National Airport.

7

25.     In October 2022, Mr. Demir attended a summit of leading philanthropists at the Vatican organized on behalf of the Pope. During the summit, Mr. Demir spoke with Jeff Bezos, founder and Executive Chairman of Amazon.




*Speaking with Jeff Bezos at the "Faith and Philanthropy" summit*

26.     When Mr. Demir arrived at the airport for his flight to the summit, eight TSA agents met him. They subjected Mr. Demir to additional screening, beyond even the enhanced screening with which he has become familiar. When the agents asked where he was traveling, he showed them his invitation letter on behalf of the Pope to attend the inaugural "Faith and Philanthropy Summit."

27.     On December 7, 2021, Mr. Demir traveled through Dallas – Fort Worth International Airport. Airport personnel denied him a boarding pass, causing him to miss his flight. TSA personnel searched him and his electronics for several hours.

28.     He refused to leave the secure area once he finally cleared screening and eventually boarded a flight home, but only at great inconvenience, public humiliation, and personal cost.

8

29.     On December 8, 2021, he traveled from Chicago O'Hare International Airport to Ronald Reagan Washington National Airport but again experienced extensive delays.

30.     Mr. Demir avoids traveling with family, friends, or colleagues to avoid the embarrassment that results from government agents publicly identifying him as a security risk.

31.     When possible, Mr. Demir books his travel separate from that of his family so that they are not subjected to the same level of scrutiny he faces when traveling. Otherwise, his family members endure increased scrutiny and embarrassment simply due to traveling with Mr. Demir.

32.     Mr. Demir received security clearance from the Secret Service and the Central Intelligence Agency ("CIA") for multiple high-security events. Yet, he endures unwarranted and invasive suspicion by TSA and DHS. The Secret Service and CIA would not clear him for high-security events if he posed a threat.

33.     Mr. Demir took advantage of the only avenue available to him to seek redress for his travel concerns: the DHS Traveler Redress Inquiry Program ("TRIP").

34.     DHS closed Mr. Demir's first DHS TRIP complaint on November 26, 2016. He initiated his second TRIP complaint on January 18, 2017, which DHS closed on March 24, 2020.

35.     He filed another TRIP complaint on March 15, 2018; DHS closed that one on March 30, 2020.

36.     He filed *yet another* TRIP complaint on March 10, 2020, which closed on June 6, 2021.

37.     His most recent TRIP complaint, filed on January 14, 2022, closed on August 1, 2022. He received a letter that "neither confirm[s] nor den[ies]" his watchlisting status, a response consistent with that given to individuals who are not on the No Fly List but are on a government watchlist and included in the TSDS.

9

38.    Mr. Demir filed requests for information under the Freedom of Information Act ("FOIA") with DHS, TSA, and FBI, among other agencies, but has been unable to obtain information through those avenues either.

39.    In all these instances, DHS closed Mr. Demir's TRIP complaints without giving him or his representatives further explanation.

## VI.    CAUSES OF ACTION

### Count I: Declaratory Judgment

**A.    Declaration that Defendants Violated the Administrative Procedure Act**

40.    Plaintiff Demir incorporates by reference all numbered paragraphs above.

41.    Plaintiff Demir is entitled to declaratory relief stating that Defendants violated his above-named rights pursuant to 28 U.S.C. §§ 2201–2202.[2]

**B.    Declaration that Defendants Violated the Fifth Amendment's Procedural Due Process Requirement**

42.    Plaintiff incorporates by reference all numbered paragraphs above.

43.    Plaintiff Demir is entitled to declaratory relief stating that Defendants violated his above-named rights pursuant to 28 U.S.C. §§ 2201–2202.

**C.    Declaration that Defendants Violated the Fifth Amendment's Substantive Due Process Requirement**

44.    Plaintiff Demir incorporates by reference all numbered paragraphs above.

45.    Plaintiff Demir is entitled to declaratory relief stating that Defendants violated his above-named rights pursuant to 28 U.S.C. §§ 2201–2202.

### Count II: Violation of the Administrative Procedure Act

46.    Plaintiff Demir incorporates by reference all numbered paragraphs above.

---

[2] Plaintiff recognizes that declaratory relief is a type of relief requested and not a free-standing cause of action. However, Plaintiff includes it upfront for clarity of the relief sought.

47.    Mr. Demir exhausted his administrative remedies, as DHS TRIP is the only procedure through which he may request information about his watchlist status and correct any false information that may be included in the TSDS.

48.    Despite submitting several TRIP complaints, Defendants are yet to provide Mr. Demir or his representatives with any substantive explanation for the extensive security screening he faces when traveling.

49.    Defendants' letter ending Mr. Demir's final DHS TRIP complaint is a final agency action.

50.    DHS TRIP provides Mr. Demir with no notice, meaningful opportunity to be heard, or rebut any accusations against him, and is arbitrary, an abuse of discretion, and unlawful.

51.    Defendants' insufficient procedure results in significant personal and financial harm to Mr. Demir, as he cannot clear his name and avoid the extensive delays he faces when traveling.

### Count III: Violations of Plaintiff Demir's Fifth Amendment Procedural Due Process Rights by all Defendants

52.    Plaintiff Demir incorporates by reference all numbered paragraphs above.

53.    When government actions deprive citizens of liberty or protected interests within the Fifth or Fourteenth Amendments, procedural due process dictates that the government must follow certain constraints. Specifically, the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. IV.

54.    The right to travel represents a fundamental liberty interest recognized by the Supreme Court: "[f]reedom of movement across frontiers . . . may be as close to the heart of the individual as the choice of what he eats, or wears, or reads."[3]

55.    While Mr. Demir can eventually travel after substantial delays, his liberty interests have

---

[3] *Kent v. Dulles*, 357 U.S. 116, 126 (1958); *see also Califano v. Torres*, 435 U.S. 1, 5 n.6 (1978) ("The constitutional right of interstate travel is virtually unqualified") (internal citations omitted).

been—and will likely continue to be, without court intervention—significantly impeded by Defendants' actions.

56.     DHS TRIP, as it exists, is a deficient mechanism that fails to afford Mr. Demir or those similarly situated an opportunity to be meaningfully heard. Despite its apparent failings, this remains the only mechanism currently available to Mr. Demir to seek a remedy for these problems.

57.     Defendants' putative inclusion of Mr. Demir in the TSDS and/or on the Selectee List causes Mr. Demir significant travel delays. These delays, in turn, cause other difficulties, including additional expenses including alternative flight and hotel accommodations, missed business opportunities, and public humiliation. These harms occur without providing Mr. Demir with a constitutionally adequate mechanism to challenge his inclusion.

58.     Plaintiff Demir is entitled to know the charges and allegations against him so that he may refute them and correct any errors. He is entitled to know whether he is on any government watchlist and why he regularly undergoes the articulated severe screening and scrutiny.

59.     Defendants' failure to respond meaningfully to Mr. Demir's DHS TRIP complaints, despite multiple requests, prevents Mr. Demir from learning whether he is on a watchlist and the reason for Defendants' actions toward him. Defendants' actions deprive him of any meaningful opportunity to confront any allegations against him that may cause his placement on a watchlist.

60.     This system violates procedural due process requirements guaranteed by the Constitution because it denies Mr. Demir the opportunity to receive notice, be heard, or have a decision made by a neutral decision-maker, as the procedural due process clause requires. The federal government continues to infringe upon Mr. Demir's liberty interests, including his liberty interest in travel.

61.     Mr. Demir reasonably fears experiencing the same or similar treatment in the future, as he has yet to determine the cause of the extended searches and delays he regularly endures. He has

not had a meaningful opportunity to refute any potential allegations against him.

62.     Defendants retain the sole authority and discretion to return Mr. Demir to any watchlist or other designation they choose, even if they were to briefly remove him for a time, making these problems likely to recur.

## Count IV: Violations of Plaintiff Demir's Fifth Amendment Substantive Due Process Rights by all Defendants

63.     Plaintiff Demir incorporates by reference all numbered paragraphs above.

64.     The DHS TRIP process is constitutionally deficient and does not provide users with the substantive due process rights guaranteed by the Constitution.

65.     The Fifth Amendment's substantive due process requirement bars arbitrary and wrongful government actions, regardless of the fairness or equity of implementation.

66.     The substantive due process rights guaranteed in the Constitution require heightened protection against government interference. They also forbid government actions that infringe upon specific fundamental liberty interests unless the government narrowly tailors the infringement to serve a compelling government interest.

67.     The right to travel is a fundamental liberty interest.

68.     The right to pursue a chosen profession is a liberty interest.

69.     Defendants continue to interfere with Mr. Demir's chosen profession, as it requires regular domestic and international travel on his part.

70.     Mr. Demir's grievances relate to the act of flying, among other relevant acts. As long as he maintains a job that requires the regular travel that his humanitarian work does, he can reasonably expect to endure further extensive delays and searches.

71.     Defendants fail to provide Mr. Demir with meaningful answers to his many TRIP complaints, and failing to respond promptly to them, constitute violations of his substantive due

process rights.

72.     The DHS TRIP process is not narrowly tailored to meet a compelling government interest, as the law requires.

73.     Defendants fail to provide Mr. Demir with any explanation for why he regularly experiences additional scrutiny and "SSSS" designations, despite his invitations to speak to government agencies and grant of security clearances from the Secret Service and the CIA.

74.      The DHS TRIP process does not allow an individual to learn any information other than confirmation that one is on the No Fly List. Otherwise, the process results in a standard "neither confirm nor deny" letter, consistent with the response received by those included in the TSDS.

75.     Without access to more information, Mr. Demir and those similarly situated have no meaningful opportunity to confront the allegations against them.

76.     Without a meaningful opportunity to confront any allegations against them, the harm suffered by Mr. Demir and others similarly situated remains ongoing.

**Count V: Nominal and Compensatory Damages Against all Defendants**

77.     Plaintiff Demir incorporates by reference all numbered paragraphs above.

78.     Plaintiff is entitled to nominal and compensatory damages for the above-described violations of his rights.

79.     Mr. Demir regularly suffers harm in the form of additional expenses incurred for changing flights and hotel reservations necessitated by the delays Defendants cause him.

80.     Mr. Demir has missed business opportunities because of the extended and unexplained delays caused by Defendants.

81.    Defendants publicly subject Mr. Demir to extensive security screening, causing him the shame and embarrassment of being publicly portrayed as a suspected criminal or somehow otherwise dangerous.

82.    Mr. Demir must retain counsel and file numerous complaints through unclear government processes, taking time away from his work and personal life to challenge Defendants' actions and seek redress.

83.    As a result of these harms, Mr. Demir is entitled to damages, nominal and otherwise, from Defendants.

**Count VI: Attorneys' Fees under the Equal Access to Justice Act Against all Defendants**

84.    Plaintiff incorporates by reference all numbered paragraphs above.

85.    The Equal Access to Justice Act, as amended 5 U.S.C. § 504 and 28 U.S.C. § 2412, provides the award of costs and attorneys' fees to a prevailing party in litigation against the United States or one of its agencies.

86.     Plaintiff Demir respectfully requests that this Court grant him costs and fees as provided by the EAJA.

## <u>JURY DEMAND</u>

87.    Plaintiff Demir requests a jury trial on this matter.

## <u>PRAYER FOR RELIEF</u>

       Plaintiff Demir prays for judgment in favor of the plaintiff and against the defendants and respectfully requests that this Court grant the following relief:

1.    Accept jurisdiction over this action;

2.    Issue a declaratory judgment that Defendants violated Plaintiff Demir's right to procedural due process under the Fifth Amendment to the United States Constitution;

3.      Issue a declaratory judgment that Defendants violated Plaintiff Demir's right to substantive due process under the Fifth Amendment to the United States Constitution;

4.      Instruct Defendants to revise their procedures and policies regarding DHS TRIP and other means of redress relating to watchlists;

5.      Issue a declaratory judgment that the actions of Defendants constitute an abuse of discretion and accordingly violate the Administrative Procedure Act;

6.      Enjoin Defendants from further violations under these same policies and procedures;

7.      Award Plaintiff Demir damages, including compensatory damages from missed flights and lost earning potential;

8.      Award attorneys' fees, costs, and expenses as appropriate against all Defendants; and

9.      Grant any further relief that the Court deems just and proper.

DATED this 22nd day of December 2022.

*/s/Christina A. Jump*
**Christina A. Jump**
TX Bar No. 00795828
*Admitted to the General Bar and Trial Bar of this District*
Samira S. Elhosary
MD Bar No. 211214026
*Admitted to the General Bar of this District*
Constitutional Law Center for Muslims in America
100 N. Central Expy., Ste. 1010
Richardson, TX 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
selhosary@clcma.org

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of Plaintiff's Original Complaint

was electronically filed and served on the Court's electronic filing system:

DATED this 22nd day of December, 2022.

*/s/Christina A. Jump*
**Christina A. Jump**
Attorney for Plaintiff

17