IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALIL DEMIR, | |
| Plaintiff, | No. 22-cv-07209 |
| v. | Judge John F. Kness |
| ALEJANDRO MAYORKAS *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit concerning Plaintiff Halil Demir's inclusion on a terror watchlist, Plaintiff contends that he has been wrongfully retained on the watchlist and that the redress process available for such situations is legally deficient. Plaintiff alleges that, when he flies, he is often subjected to additional security screenings, significant delays, and embarrassment. Plaintiff has sued numerous heads of relevant governmental Departments in their official capacities, challenging the constitutionality of the redress mechanism—DHS TRIP—established for such conundrums.

As explained below, because Plaintiff's Complaint seeks to "amend [or] modify" orders by the TSA Administrator, a federal statute, 49 U.S.C. § 46110, requires that Plaintiff's challenge be heard, if at all, by the Court of Appeals. Defendants' motion (Dkt. 22) to dismiss for lack of subject matter jurisdiction is therefore granted, and the case is dismissed without prejudice.

I.    **BACKGROUND**

    A.    **Terrorist Screening Database and DHS TRIP**

The Department of Homeland Security (DHS) is responsible for protecting the United States from terrorist attacks at home. *See* 6 U.S.C. § 111. The Transportation Security Administration (TSA) sits within DHS and is responsible for "security in all modes of transportation." *See* 49 U.S.C § 114(d). To that end, Congress charged the TSA Administrator with "assess[ing] threats to transportation [and] develop[ing] policies, strategies, and plans for dealing with threats to transportation security." *See id.* §§ 114(f)(2–3).

The Terrorist Screening Center (the "Screening Center"), organized under the National Security Branch of the Federal Bureau of Investigation (FBI), maintains a terrorism watchlist called the Terrorist Screening Database or Terrorist Screening Dataset (the "Database"). (*See* Dkt. 22-2). TSA uses the Database to "identify individuals on passenger lists who may be a threat to civil aviation or national security." 49 U.S.C. § 114(h)(3); (*see also* Dkt. 22-2 at 5.)

Congress directed the TSA Administrator to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system." 49 U.S.C. § 44903(j)(2)(C)(iii)(I). The TSA Administrator did so; that process is called the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP), codified at 49 C.F.R. §§ 1560.201–1560.207. If an individual "believes

2

he or she has been improperly or unfairly delayed or prohibited from boarding an aircraft," that individual may initiate an inquiry via DHS TRIP. *Id.* at 1560.205. TSA will coordinate with the Screening Center to "review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response." *Id.*

### B. Plaintiff's allegations

Plaintiff alleges that he has, on numerous occasions, experienced significant delays and additional security scrutiny when traveling by plane. (Dkt. 19 ¶¶ 27–47.) Some of these delays and additional searches and screenings occur in full public view, which, Plaintiff says, harms his reputation. (*See, e.g., id.* ¶¶ 43–45.)

Plaintiff alleges that he has filed no fewer than five DHS TRIP complaints. (*Id.* ¶¶ 52–55.) TSA's response to his most recent complaint, filed in January 2022, neither confirmed nor denied Plaintiff's placement on any traveler screening list. (*Id.* ¶ 55.) After unsuccessfully seeking information through a Freedom of Information Act request, Plaintiff brought this suit. (*Id.* ¶ 16.)

Plaintiff alleges that these impediments to his travel, and the ineffective administrative redress process, amount to violations of the Administrative Procedure Act (APA) and Plaintiff's substantive and procedural due process rights. (*Id.* at 13–16.) For relief, Plaintiff seeks: (1) declarations noting those violations of his rights; (2) an order instructing Defendants to revise the DHS TRIP policies and procedures; (3) an order instructing Defendants either to remove Plaintiff from any federal watchlists or to provide a sufficient explanation of the reasons for his inclusion on

3

those lists; (4) an injunction preventing further similar violations; and (5) damages and costs. (*Id.* at 18.) Defendants now move to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See generally* Dkt. 22-1.)

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction over a case. *See Ctr. For Dermatology & Skin Cancer Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* But the plaintiff bears the burden of proving that the jurisdictional requirements have been met. *Id.*

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in

4

the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

Defendants move to dismiss on jurisdictional grounds and for failure to state a claim under either the Constitution or the APA. (*See generally* Dkt. 22-1.) Because the Court must dismiss for lack of jurisdiction, this opinion does not address the plausibility of Plaintiff's allegations.

### A. 49 U.S.C. § 46110

Defendants argue that 49 U.S.C. § 46110 divests this Court of jurisdiction to hear this case. (Dkt. 22-1 at 11.) In relevant part, Section 46110 provides that an individual "may apply for review of an order issued by . . . the Administrator of the Transportation Security Agency . . . by filing a petition for review" in the Courts of Appeals, and the Courts of Appeals have "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order." 49 U.S.C. § 46110(a), (c).[1]

---

[1] 49 U.S.C. § 46110(a): "a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (s) [1] of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day."

49 U.S.C. § 46110(c): "When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct

### B. The Orders Being Challenged

Whether Section 46110 applies in this case depends on whether Plaintiff challenges an order of the TSA Administrator. In his opposition to Defendants' motion, Plaintiff argues that he challenges both "the constitutionality of DHS TRIP procedures under the Fifth Amendment's Due Process Clause" and "his original placement in the [Database]." (Dkt. 25 at 5.) In reply, the government agrees that Plaintiff challenges the adequacy of DHS TRIP but contends that, in contradiction to Plaintiff's argument in his response brief, the complaint challenges his maintenance in the watchlist post-DHS TRIP grievance, not his initial placement in the Database. (Dkt. 27 at 2.) The parties agree that Plaintiff challenges the adequacy of the DHS TRIP process itself, so the Court first considers whether that challenge amounts to a challenge of a TSA order subject to Section 46110. Following that analysis, the Court determines whether Plaintiff challenges, as he asserts in his responsive brief, his initial placement on the watchlist or rather, as Defendants argue, Plaintiff challenges his maintenance on that list.

#### i. *Adequacy of DHS TRIP Process*

Plaintiff's allegations concerning the adequacy of the DHS TRIP process are subject to jurisdiction channeling under Section 46110 if: (1) the establishment of

---

further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive."

DHS TRIP was a TSA order; and (2) Plaintiff's allegations amount to a challenge of that order. *See* 49 U.S.C. § 46110(a).

          a.    DHS TRIP is an Order issued by the TSA Administrator

Although the Seventh Circuit has not yet spoken directly to this issue, it has held that the term "order" in 49 U.S.C. § 1486—the precursor to Section 46110[2]—should be construed broadly. As the Seventh Circuit has explained, that broad reading is required because "[t]he term 'order' is broadly defined in both the Federal Aviation Act, 49 U.S.C. § 1354(a) and the Administrative Procedure Act, 5 U.S.C. § 551(6)." *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312–14 (7th Cir. 1980). Moreover, the purposes of so-called "special review statutes," coherence and economy, are best served if "courts of appeals exercise their exclusive jurisdiction over final agency actions." *Id.* at 313. Section 46110 is one such special review statute. *See Mokdad v. Lynch*, 804 F.3d 807, 811 (6th Cir. 2015); *Durso v. Napolitano*, 795 F. Supp. 2d 63 (D.D.C. 2011). Construing broadly the term "order" in Section 46110, and to further the twin goals of coherence and economy in the application of special review statutes, the Court holds that the establishment of DHS TRIP was an "order" under Section 46110.

The establishment of DHS TRIP was, as well, an order "issued by . . . the Administrator of the [TSA]." § 46110. Acting under a Congressional mandate, the

---

[2] *See Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022) (noting that 49 U.S.C. § 1486 was the precursor to Section 46110); *Gilmore v. Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006) (same).

TSA Administrator established DHS TRIP to serve as a redress mechanism. *See* 49 U.S.C. § 44903(j)(2)(C)(iii)(I); 49 C.F.R. §§ 1560.201–1560.207.

b. Plaintiff's Challenge to DHS TRIP

Because DHS TRIP is a TSA order, the Court must next determine whether the allegations in the complaint constitute a request to affirm, amend, modify, or set aside any part to that order. Plaintiff cites numerous cases that, he says, explain that a challenge to DHS TRIP is not channeled to the Courts of Appeals by Section 46110. (*See* Dkt. 25 at 4–5.) But of those cases, only two district court decisions explicitly held that challenges to the adequacy of DHS TRIP are not subject to channeling by Section 46110. Because both of those decisions rested on an outdated version of DHS TRIP, neither is controlling.

In *Khaled El Ali v. Barr*, a district court in Maryland held that because the Screening Center "remains the driving force behind DHS TRIP, challenges to the adequacy of the procedure are not subject to Section 46110 channeling." 473 F. Supp. 3d 479, 504 (D. Md. 2020) (quotation marks omitted). This is so, the court reasoned, because such a challenge "does not solely implicate the independent action of TSA." *Id.* Similarly, in *Kovac v. Wray*, a district court in Texas held that Section 46110 did not apply, at least in part, because "any remedy would involve both TSA and the [Screening Center]." 363 F. Supp. 3d 721, 742 (N.D. Tex. 2019).

Both *El Ali* and *Kovac* cited *Ege v. United States Dep't of Homeland Sec.*, 784 F.3d 791, 795 (D.C. Cir. 2015), which in turn relies on *Latif v. Holder*, 686 F.3d 1122 (9th Cir. 2012), for the proposition that the Screening Center—not TSA—"actually

8

reviews the classified intelligence information about travelers and decides whether to remove them from the [watchlist]." *Ege*, 784 F.3d at 795. But the plaintiff in *Ege* "s[ought] removal from the No-Fly List or, at a minimum, a meaningful opportunity to be heard." *Id.* at 793. And the plaintiff in *Latif* brought a "substantive challenge[] to the inclusion of [his] name on the [watchlist]." *Latif*, 686 F.3d at 1127. In neither of those cases did the plaintiff directly challenge the adequacy of the DHS TRIP process itself.

More persuasive is that TSA implemented a significant revision to DHS TRIP in 2015—that is, after *Ege* and *Latif* were decided. As the Ninth Circuit explained, that revision "made the TSA Administrator alone—not the Terrorist Screening Center—responsible for issuing a final order maintaining a traveler on the No Fly List at the conclusion of the DHS TRIP process." *Fikre v. FBI*, 35 F.4th 762, 774 (9th Cir. 2022). In *Fikre*, the Ninth Circuit acknowledged that this administrative revision resulted from the *Latif* decision. *Id.* at 773

TSA's 2015 revision to DHS TRIP thus renders both *Ege* and *Latif*, and therefore *El Ali* and *Kovac*, distinguishable. *Kovac* quoted *Ege* (which, in turn, quoted *Latif*) for the now-obsolete point that the Screening Center, not TSA, determines whether to remove an individual from a watchlist. *Kovac*, 363 F. Supp. 3d at 742 (quoting *Ege*, 784 F.3d at 795 (quoting *Latif*, 686 F.3d at 1128–29)). But after the revision noted in *Fikre*, that statement is no longer accurate: the decision to remove a claimant from a watchlist now rests with the TSA Administrator alone.[3]

---

[3] *Kovac* explicitly declined to consider the revised DHS TRIP procedures. 363 F. Supp. 3d at 734 n.4.

9

In sum, based on these changed circumstances, *El Ali* and *Kovac* no longer have significant bearing on this case. More specifically, neither *Ege* nor *Latif* directly grappled with a plaintiff's specific challenge to the adequacy of the DHS TRIP process itself—likely because both decisions addressed a now-outdated version of Section 46110.

Because DHS TRIP is a TSA order, the Court formulates Section 46110's operative question this way: does Plaintiff's challenge to DHS TRIP's adequacy amount to a request for a court to "affirm, amend, modify, or set aside any part of" DHS TRIP? 49 U.S.C. § 46110(c). Plaintiff asks the Court to "[i]nstruct Defendants to revise their procedures and policies regarding DHS TRIP and other means of redress relating to watchlists" and "[e]njoin Defendants from further violations under these same policies and procedures." (Dkt. 19 at 18.) A request to "revise" is akin to a request to "amend, modify, or set aside." As a result, Section 46110 applies to Plaintiff's request for DHS TRIP revision.

This conclusion is in accordance with the reasoning of several other decisions. In *Mokdad v. Lynch*, the Sixth Circuit noted, without deciding, that "challenges [to] the adequacy of [DHS TRIP] . . . amount to a challenge to a TSA order. 804 F.3d 807, 811 (6th Cir. 2015).[4] Two district courts, applying that dicta, held that challenges to the adequacy of DHS TRIP are subject to Section 46110. *See Salloum v. Kable*, No.

---

[4] In *Mokdad*, the Sixth Circuit held that the plaintiff's failure to join TSA as a defendant required dismissal without prejudice, and the court thus "declined to opine at this time whether § 46110 would deprive the district court of subject-matter jurisdiction over Mokdad's claims challenging the adequacy of the redress process, including any broad constitutional claims, if he were to file a new suit naming TSA as a defendant." *Id.* at 812.

10

19-CV-13505, 2020 WL 7480549 at *12 (E.D. Mich. Dec. 18, 2020); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240 at *4 (E.D. Mich. Aug. 30, 2016), *aff'd sub nom. Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017).

And the Ninth Circuit has held that a different TSA redress process is a TSA order subject to jurisdiction-channeling under Section 46110. *See Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022). In that case, TSA revoked an airline agent's security badge after TSA initially determined that the agent might no longer be eligible to hold airport security credentials. *Id.* at 1160. On the agent's challenge to this initial determination, the agency restored his credentials. *Id.* But the travel-related delays and harassment by TSA did not stop, so the agent sued, seeking, among other things, a revision to the redress process by which the agent challenged TSA's initial determination. *Id.* at 1161. On appeal, the Ninth Circuit held that the challenged redress process was an "order" under Section 46110. *Id.*[5]

---

[5] The Ninth Circuit established a test to determine whether agency decisions are subject to channeling under § 46110: agency decisions are "agency orders under § 46110 if they impose an obligation, deny a right, or fix some legal relationship. Qualifying orders (1) are supported by a reviewable administrative record, (2) are a definitive statement of the agency's position, (3) have a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and (4) envision immediate compliance with [their] terms." *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2022) (cleaned up). Plaintiff argues that "[w]hen individuals on the Selectee list file DHS TRIP complaints, adjudication of those complaints impose[s] no 'direct and immediate effect on the day-to-day operations of the subject party.' " (Dkt. 25 at 5 (quoting *Magassa*, 52 F.4th at 1165).) Defendants counter that by "determin[ing] the procedure through which individuals may challenge their alleged TSDS status", "implementation of DHS TRIP plainly does have such direct and immediate effects." (Dkt. 27 at 4.) Defendants also note that DHS TRIP "creates administrative records that are reviewed in the courts of appeals." (*Id.* at 4–5.) Although not necessary to this decision, a cursory analysis under this *Magassa* test suggests that implementation of DHS TRIP is an agency order under § 46110 because, at the least, DHS TRIP "fix[es] some legal relationship" between an aggrieved traveler and federal authorities by enacting the first step for obtaining watchlist relief. Further, to support its conclusion in *Magassa* that the challenged redress process constituted an order under Section 46110, the Ninth Circuit cited, among others,

11

In short, establishment of DHS TRIP is an order of TSA. Moreover, Plaintiff seeks amendment of DHS TRIP. These circumstances mean that Section 46110 applies, and Plaintiff's challenge to the adequacy of DHS TRIP must therefore be heard, if at all, by the Courts of Appeals.

  *ii.*  *Watchlist Challenges*

Having determined that Plaintiff's challenge to the sufficiency of DHS TRIP must be heard by the Courts of Appeals, the Court must next consider whether the complaint challenges Plaintiff's initial placement on the watchlist or rather his maintenance on it following the submission of his grievances through DHS TRIP. An analysis of the complaint reveals that Plaintiff's challenge focuses on the latter.

In *Fikre*, the Ninth Circuit considered whether the plaintiff challenged his initial placement on the watchlist or rather his maintenance on it. *Id.* To make that determination, the court analyzed the complaint: "With respect to his procedural due process claim, Fikre alleges that the government '*placed* Plaintiff's name in the Terrorist Screening Database and on its No Fly List subcomponent' and asserts that he 'has experienced economic, reputational, physical, and liberty harms due to Defendants' *placement* of his name' on those lists." *Id.* at 775 (emphasis in original). Because the complaint "spen[t] just two paragraphs . . . challeng[ing] the TSA Administrator's decision," it did not sufficiently "challenge the TSA Administrator's decision made at the end of the DHS TRIP process or seek a court order requiring the

---

*Sima Prods.*, 612 F.2d at 312, for the proposition that the Seventh Circuit found 49 U.S.C. § 1486, "46110(a)'s predecessor statute," to be an order for Section 46110 purposes. *Id.*

TSA Administrator to remove him from the No Fly List." *Id.* Rather, the Ninth Circuit concluded that, "in sum," the plaintiff challenged his initial placement on the watchlist, taking the complaint out of Section 46110's mandate. *Id*; *see also Amerijet Int'l, Inc. v. United States Dep't of Homeland Sec.*, 43 F. Supp. 3d 4, 16 (D.D.C. 2014) (court must consider the "gravamen" of the claims).

  Plaintiff argues, without citation to his complaint, that, in addition to challenging the adequacy of DHS TRIP, he "challenges his original placement in the [Database]." (Dkt. 25 at 5.) But an analysis of the complaint does not bear out that assertion, as Plaintiff's allegations center on the inadequacy of the DHS TRIP process itself. Plaintiff's complaint speaks directly to Plaintiff's initial placement on the watchlist in only one way: namely, through Plaintiff's identification of "Unknown [Screening Center] Employees" as "the person or persons who presumably reviewed and accepted Mr. Demir's nomination to the [Database], creating his extensive travel difficulties." (*Id.* ¶ 7.) But Plaintiff's request in his prayer for relief that the Court "[o]rder Defendants to remove Plaintiff from any federal watchlists"[6] suggests instead that Plaintiff is interested in challenging the decision to *keep* him on the list, not the decision to put him there in the first place. (*Id.* at 18.) Put another way, the complaint challenges two orders: the adequacy of DHS TRIP and the TSA Administrator's decision not to remove Plaintiff from the watchlist following his DHS TRIP

---

  [6] This prayer reads in full: "Order Defendants to remove Plaintiff from any federal watchlists he may appear on or explain the reasons for his placement in a way that provides him with a meaningful opportunity to challenge these designations." (Dkt. 19 at 18.) The second clause (omitted above), " . . . or explain the reasons for his placement . . . ," essentially asks the Court to do what Plaintiff wants DHS TRIP to do. This further highlights the centrality of the challenge to the DHS TRIP process that underlies Plaintiff's Complaint.

13

grievances. But because both orders are "orders issued by . . . the Administrator of the [TSA]," they are subject to the jurisdiction-channeling requirements of Section 46110.

## IV. CONCLUSION

For these reasons, Defendant's motion to dismiss (Dkt. 22) is granted.

SO ORDERED in No. 22-cv-07209.

Date: July 17, 2024

JOHN F. KNESS
United States District Judge